**DAVINO, a Minor, etc. et, Plaintiffs-Appellees, v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24563. Decided December 18, 1958.

Franklin A. Polk, for plaintiffs-appellees.
Burgess, Fullmer, Parker & Weh, for defendant-appellant.

## OPINION

By KOVACHY, J:

This is an appeal on questions of law from a judgment entered on a verdict rendered by a jury in favor of the plaintiffs in the Common Pleas Court of Cuyahoga County.

The plaintiff, Donald J. Davino, a minor by his next friend, Rose Meister, and plaintiff, Rose Meister, Administratrix of the Estate of James V. Davino, brought this action against the defendant, John Hancock Mutual Life Insurance Company, appellant here, to recover under a group policy of insurance issued by said defendant insurance company to the National Screw & Manufacturing Company which maintained it for its employees. The group policy of insurance carried both death and permanent total disability benefits.

James Davino was an employee of the National Screw & Manufacturing Company and was covered by said group policy of insurance.

The second amended petition, on which this cause was tried, avers that James Davino, while employed by the National Screw & Manufacturing Company, became totally disabled on or about the 1st day of January, 1954, and that such total disability continued from that date to April 28, 1954, on which date James Davino died. Plaintiffs also say that on the date of his death, the policy of group insurance was in force on his life. and as a result, claim the right, under the terms of the policy, to recover $7500.00 under the provision insuring the life of James Davino and $7500.00 for permanent total disability.

Hereafter we shall refer to the National Screw & Manufacturing Company as the Employer, James Davino as the Employee, and the John Hancock Mutual Life Insurance Company as the Company.

The record discloses that the Employee was first covered under this group policy of insurance on February 18, 1932; that Donald J. Davino was the designated beneficiary; that the Employee worked on his job until February 4, 1954; that the records of the Company were marked "voluntary quit" as of February 28, 1954, which notation was affixed to his record for not having reported for work or having called his employer within a week following his last day on the job; that the Employee was

paid in full for the month of February, 1954; that the premium for his insurance was paid partly by the Employer and partly by the Employee; that the Employer deducted monthly from his pay check the premiums due on various forms of insurance carried by the Employee through the Employer, it being a mere bookkeeping entry; that the last monthly premium deductions from the Employee's pay check on the records of the Employer's books were made as of January 31, 1954; that no premium deductions were made when the pay check was made up on February 28, 1954; that the Employee had absented himself from the job approximately 25% of the time during the last year of his employment; that the Employer had no knowledge of any illness or disability during the Employee's employment with them; that on April 13, 1954, the Employee entered St. Alexis Hospital for cirrhosis of the liver induced by excessive and continuous drinking of alcohol; that the Employee died in said hospital on April 28, 1954, as a result of said disease; that the Employee did not know the seriousness of his illness at any time; that the Employee at no time furnished the insurance company with any proof or notice of total and permanent disability; that the Employee gave no official notice to his Employer of sickness; that the Company officially notified counsel for the estate of the Employee on August 23, 1954, that the group insurance policy "automatically expired when James Davino quit on February 28, 1954"; that counsel for the Employee on November 24, 1954, made a formal demand on the Company for the payment of $7500.00 under this group policy and requested that forms be forwarded to him "to collect the permanent total disability benefit"; that on December 17, 1954, counsel sent another letter to the Company stating that if no response was received to his letter of November 24, 1954, within five days, he would consider it a rejection of their claim and file suit; that a "Statement of Claim" form was thereafter forwarded by the Company to counsel for the Employee; that said "Statement of Claim" was prepared by Rose Meister as Administratrix on January 28, 1955; that said Administratrix, to the question "When did your dependent first become disabled and unable to work?" answered, "February 28, 1954"; that the lower half of said "Statement of Claim" was completed by an official of the Employer; that the Employer, in answer to the question as to when the insurance coverage terminated answered, March 1, 1954; that said Employer in the same "Statement of Claim" checked the word "quit" for the reason for its employee leaving his work; that the Employer forwarded said "Statement of Claim" to the Company on February 5, 1955; that on March 4, 1955, the Secretary and Treasurer of the Employer in answer to a telegram sent him by the Company wired the Company: "James Davino last worked here on February 4, 1954. Have no evidence of disability."; that on June 27, 1955, the Company wrote the Secretary and Treasurer of the Employer in part:

"Our recordds show that the insurance terminated on February 4, 1954, due to the employee terminating his employment.

"As death occurred on April 28, 1954, after the termination of the insurance we must deny liability for this claim. Claim cannot be considered under the permanent and total disability provision of your group

policy since the disability commenced on February 28, 1954, after the employee had left work. * * *"; that counsel for the parties in open court stipulated "that the jury need only return a general verdict either for or against the plaintiff or the defendant; and that the amount to be recovered, if any, would be calculated by the attorneys in accordance with the terms of the policy of life insurance governing the issues in this case"; that the expert witness for the plaintiffs testified in answer to a hypothetical question that the Employee became totally and permanently disabled in October of 1953; that evidence of a substantial nature was presented tending to prove each and every statement of fact incorporated in the hypothetical question propounded to the expert witness; that the trial court instructed the jury to bring a general verdict without any involvement as to money and to find for the plaintiffs, if, by a preponderance of the evidence, they have proven ". . . that the insurance policy was in effect, that the premiums were paid, and that he was covered and died within the ninety days after such illness arose," and to give full consideration to the terms incorporated in the insurance policy admitted in evidence and before them; that the court also charged the jury upon the questions of law bearing upon the provision of the policy dealing with the payment of benefits to one totally and permanently disabled; that the jury returned a general verdict in favor of the plaintiffs; that counsel were "unable to agree as to the amount of interest to be paid by the insurance company to date of judgment"; that the court on its own responsibility found that the jury could have "found that due proof of loss could have been submitted as early as November 21, 1953, and as late as February 5, 1955, and as a result thereof, the limits of interest on the principal amount of said policy would range from a high of One Thousand Nine Hundred Fifty Dollars ($1950.00) to a low of One Thousand Four Hundred Six Dollars and Twenty-five Cents ($1406.25) and the court adopts a figure at the midpoint between these two extremes of One Thousand Six Hundred Seventy-eight Dollars and Sixty-two Cents ($1678.62) as being the amount of interest due to the plaintiffs from the defendant up to the date of judgment"; that judgment was entered for $9178.62 plus interest at the rate of 6% per annum from the 21st day of March, 1958, until said judgment is fully satisfied.

The assignments of error are:

1. That the trial court erred in overruling motions by the defendant (a) for a directed verdict at the close of all the evidence and (b) for judgment and for a new trial after verdict, and in entering judgment thereon;

2. That the verdict and judgment are manifestly against the weight of the evidence;

3. That the trial court determined the amount of interest on a verdict that was indefinite, uncertain and defective;

4. That the trial court erred in instructing the jury;

5. That the verdict and judgment are contrary to law.

While, as indicated above, the plaintiffs sought recovery on both the life and total and permanent disability provision of the policy of in-

surance, it is manifest that they could recover, upon proof of the essential facts, on one or the other but not on both causes of action pleaded in their petition.

A careful reading of the bill of exceptions discloses ample evidence to support a finding that the plaintiffs were entitled to recover on the life insurance feature of the group policy:

1. Evidence that this policy was in full force on February 4, 1954;

(a) The letter of June 27, 1954, from the Company in which it wrote "that the insurance terminated on February 4, 1954."

(b) The deductions for the premiums were made by the Employer as a mere bookkeeping item.

(c) The Company's records show that premiums were deducted for the Credit Union, the hospital service, and group insurance on January 31, 1954.

(d) The Employee was carried on the books of the Employer until February 28, 1954.

(e) The Employer made no deductions for insurance premiums of any sort whatever in determining the pay check of the Employee on February 28, 1954, the date of separation.

(f) The Employee himself did not terminate the insurance.

(g) If the premiums were not paid in advance, then the Employer should have deducted premiums for the month of February or certainly until February 4, 1954, the day the Employee last worked for it. A reasonable inference was that deductions for insurance premiums were made in advance by the Employer.

(h) The "Statement of Claim" filled out by the Employer sets forth March 1, 1954, as the termination date for the insurance.

2. Evidence by plaintiffs' expert witness that the Employee was a very sick man before February 4, 1954, and that such sickness continued until his death.

3. Amendment 10 to the group policy of insurance which reads as follows:

"Discontinuance of Individual Insurance. The insurance of an employee shall cease automatically on the earliest of the following dates:

(a) the date of expiration of the period for which the last required premium contribution is made by the employee;

(b) the date of termination of employment of the employee which shall be the date the employee ceases active work, except that

(1) if the employee ceases active work as a result of a leave of absence, temporary lay-off, or retirement, his employment shall be deemed to continue thereafter, for the purpose of insurance hereunder, until terminated by the Employer either by written notice to the Company or by any other means, or

(2) if the employee ceases active work due to sickness or injury, his employment shall be deemed to continue, for the purpose of insurance hereunder, during the continuance of such disability for the period of three months from the date the employee ceased active work, and thereafter during the continuance of such disability, until terminated by the Employer either by written notice to the Company or by any other means:

(c) the date of expiration of this policy."

If the jury's findings were that the employee was covered by this insurance when he last worked on February 4, 1954, and that he did not return to work due to sickness and that such disability continued until his death, it then necessarily followed under Amendment 10, paragraph (2), and they would be warranted in concluding that his employment was deemed to continue, for the purpose of insurance, during the continuance of his disability for a period of three months from the date he ceased active work. Since he died on April 28, 1954, within that three-month period, the life benefit provision of the policy would then have accrued at the time of his death and his beneficiary entitled to the full coverage of the policy in the amount of $7500.00.

The assignments of error numbers 1 and 2, therefore, are overruled.

Defendant, in the main, however, complains:

1. that the defendant was not furnished with due proof by the Employee, that while insured, the decedent became totally and permanently disabled as defined in the policy ". . . so as to effect a waiver of premiums and so as to create liability on the part of Defendant for total and permanent disability benefits . . .";

2. that defendant was not furnished with any due proof by anyone that the decedent while insured became totally and permanently disabled as defined in the policy so as to effect the waiver of future premiums and to create liability on the part of the defendant for total and permanent disability benefits;

3. that the trial court erred in arbitrarily determining and awarding the plaintiffs judgment for interest where the verdict of the jury was so indefinite, uncertain and defective that a judgment for interest could not be rendered thereon; and

4. the trial court erred in its general charge to the jury.

We are of the opinion that no useful purpose can be served in considering the complaints of appellant with respect to furnishing the Company with due proof of total and permanent disability.

Where, in a case, the jury returns a general verdict for the plaintiff, the parties having stipulated that the jury return a general verdict either for the plaintiff or defendant, on a petition containing two causes of action growing out of a policy of insurance, and where it appears that recovery can be had on either one or the other but not on both of the causes of action, and where the record shows that the jury was justified in making a return on a particular one of the causes of action and no error is demonstrable as to such cause of action, the record in no way disclosing which of the causes of action the verdict was founded on, a reviewing court is not required to consider errors claimed as to the other cause of action.

Defendant's contention that error intervened because the interest was arbitrarily determined on a verdict that was "indefinite, uncertain and defective" is untenable as regards the characterization of the verdict for the reason that such verdict was in keeping with the stipulation that the defendant voluntarily entered into with the plaintiffs and consequently bound by it. We sustain that part of this assign-

ment of error, however, as regards the method the court used in calculating the interest. The trial court properly noted in its entry with respect to interest that no specific date of accrual for payment was ascertainable under a general verdict of the jury on the issues presented. An average as to the dates "they could have found that due proof of loss could have been submitted" to the Company is a compromise entry. Such entry could only be made with the consent of the parties.

Inasmuch as the attorneys for the parties agreed at the outset of the case that the jury return a general verdict and "that the amount to be recovered, if any, would be calculated by the attorneys in accordance with the terms of the policy of life insurance governing the issues in this case," and inasmuch as the policy of insurance itself fixed the amount of recovery on either one of the two causes of action in the amount of $7500.00, and inasmuch as the parties agreed not to submit the question of interest to the jury, and since the parties were unable to agree as to the interest in accordance with their stipulation, and there exists no way to determine the date of accrual of such payment, interest perforce must commence to run from the date of the judgment entered on the verdict. Accordingly, the judgment is modified to $7500.00 with interest at 6% from the date of said judgment, and as modified, is affirmed, and the cause remanded with instructions to carry out the judgment of this court.

We find no merit in the assignment of error that the trial court erred in its general charge, and overrule the same.

Judgment modified and, as modified, affirmed, and cause remanded. Exceptions. Order see journal.

SKEEL, PJ, HURD, J, concur.